# COURT OF APPEALS OF VIRGINIA

## Record No. 2184-25-3

BRYAN SCHWAB

v.

JONATHAN SCHWAB, ET AL.

Present: Judges Beales, Lorish and Duffan

Argued by videoconference

Opinion Issued July 7, 2026[*]

## FROM THE CIRCUIT COURT OF ROCKBRIDGE COUNTY
Christopher B. Russell, Judge

Elliott M. Harding (Harding Counsel, PLLC, on briefs), for appellant.

(Benjamin Thurman; Simons, Thurman, and Fix, P.C., on brief), for appellee Jonathan Schwab. Jonathan Schwab submitting on brief.

(Rick Boyer, Guardian ad litem for Claudia Schwab; Integrity Law Firm, PLLC, on brief), for appellee Claudia Schwab. Claudia Schwab submitting on brief.

## MEMORANDUM OPINION BY
## JUDGE RANDOLPH A. BEALES

Jonathan Schwab ("Jonathan") filed a petition requesting that he be appointed as guardian and conservator of his mother, Claudia Schwab ("Claudia"). Bryan Schwab ("Bryan"), Claudia's son and Jonathan's brother, filed a cross-petition for appointment as Claudia's guardian and conservator. Following two evidentiary hearings, the Circuit Court of Rockbridge County granted Jonathan's petition. On appeal, Bryan argues that the circuit court did not have jurisdiction under Code § 64.2-2004 to enter an order appointing a guardian and conservator for

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

Claudia. Bryan further argues that the circuit court abused its discretion when it appointed Jonathan, instead of Bryan, as Claudia's guardian and conservator.

## I. BACKGROUND

Claudia Schwab lives in Lexington, Virginia, with her husband, Frederic Schwab. Claudia suffered a fractured pelvis in August 2024 after a fall in her home. She had also suffered "mental or cognitive decline." She has exhibited anti-social behavior and attempts at self-harm as well as other odd behavior.

On November 21, 2024, Jonathan Schwab filed a petition requesting that the circuit court appoint him as the guardian and conservator for his mother, Claudia Schwab. On November 25, 2024, the circuit court entered an order appointing Rick Boyer as Claudia's guardian *ad litem*. On January 31, 2025, Jonathan Schwab notified Claudia of the petition hearing that was scheduled for April 3, 2025. The written statement of facts in lieu of a transcript states, "The case was initially scheduled for an April 3, 2025 trial on Jonathan Schwab's petition and all notices were given for the April 3, 2025, hearing, including all jurisdictional notices required by § 64.2-2004."

However, the circuit court continued the April 3, 2025 hearing to May 30, 2025. Bryan Schwab filed a cross-petition on May 29, 2025.[1] Also on May 29, 2025, Jeffrey Schwab, who is also Claudia's son, filed a letter in the circuit court on Claudia's behalf "requesting for the Court to continue the matter from May 30, 2025 so that she may be appointed counsel or have time to retain independent counsel." The circuit court took Claudia's request for a continuance under advisement. Before the circuit court received any evidence that day, it asked Claudia's guardian *ad litem* Rick Boyer whether Claudia had been served notice of the May 30, 2025 hearing. Boyer informed the circuit court that notice had not been provided for the May 30, 3025 hearing

---

[1] Jeffrey Schwab also moved to intervene but withdrew his cross-petition.

but that he had visited Claudia that morning to inform her of the hearing scheduled for later that day.[2]

Both Bryan and Jonathan "agreed that there was no dispute as to whether the Respondent is in need of a guardian and conservator." The circuit court received into evidence the deposition transcripts of Frederic Schwab, Claudia's husband; Jason Carter, Claudia's previous psychiatrist (according to the written statement of facts in lieu of a transcript); and Janelle Caldwell, the home health care agency manager in charge of overseeing Claudia's in-home care.

Jonathan testified at the May 30, 2025 hearing. He testified that he was born, grew up, and still lives in Lexington, Virginia, where he works as a reporter for the local newspaper. Jonathan holds Claudia's power of attorney (i.e., he is her attorney-in-fact under her power of attorney). In August 2024, Jonathan took his parents to tour a residential living facility in Charlottesville, Virginia. Jonathan placed a deposit with the residential living facility and took steps to have his father and mother moved there. He arranged for Dr. Patricia Schirmer to administer a physical evaluation of his mother and for Dr. Carola Tanna to administer a physical evaluation of his father. The physical examinations were completed as part of the admission screening for the retirement community although Claudia and Frederic were not informed of that purpose. At the May 30, 2025 hearing, Jonathan testified that he no longer felt it necessary at that time to relocate his parents to the retirement community and that he would not attempt to do so if he was named Claudia's guardian and conservator.

Kimberly S. Hamel ("Hamel"), Bryan and Jonathan's sister and Claudia's daughter, who lives in Oregon, testified at the May 30, 2025 hearing that she supports Jonathan's petition for guardianship. Hamel testified that she felt that Bryan had restricted her phone access with her

---

[2] Neither Jonathan nor Bryan served their mother, Claudia Schwab, with notice of the May 30, 2025 hearing.

mother. She also noted a confrontation where Bryan would not let her speak to her parents outside his presence when she had come from Oregon to visit them. Hamel's daughter, Bridget, testified that she had not really been able to be in contact with her grandparents since Bryan disconnected the home's landline.[3]

Mary Koch, Claudia's half-sister, testified at the May 30, 2025 hearing via videoconference. She stated that she supported Jonathan's petition for guardianship and had made financial contributions to help pay for Jonathan's attorney. She testified that Bryan had interfered with her phone calls to Claudia in the past and once yelled, "Open ended questions only!" to direct how Koch could communicate with Claudia.

Dr. Patricia Schirmer, Claudia's primary care physician, also testified at the May 30, 2025 hearing. Dr. Schirmer characterized Bryan's visits to her office as disruptive, and she considered him to be difficult and demanding in his attempts to speak with her about his mother's care. Dr. Schirmer explained that Jonathan was her "initial, primary point of contact" but that Bryan and his wife were also now points of contact. Dr. Schirmer indicated that Bryan's wife Elizabeth was the first person who raised concerns about Claudia's mental health and concerning behavior.

Robin Greene, a representative of the Rockbridge County Department of Social Services, testified during the May 30, 2025 hearing. She stated that Bryan and his wife made two calls to Adult Protective Services due to concerns about Jonathan's actions and undue influence. Adult Protective Services ultimately determined that the reports were unfounded and closed the cases without finding any abuse.

---

[3] Bryan testified that due to Frederic Schwab's "anxiety and degrees of paranoia concerning finances, along with his age and susceptibility to being subject to 'scams,'" the family did not restore the landline after it stopped working.

After the circuit court received evidence on May 30, 2025, it then continued the hearing to July 30, 2025 for a second day of evidence. Jonathan and Bryan each provided a notice of hearing to Claudia Schwab prior to the July 30, 2025 hearing.

At that July 30, 2025 hearing, Bryan Schwab testified that he and his wife Elizabeth live in Seattle although, beginning in early 2022, he began visiting Lexington with increasing regularity and becoming more involved in his parents' daily care. Bryan testified that he was concerned when he learned that Jonathan placed a deposit at the residential living facility for their parents. Bryan also stated that "his parents' express wishes are to remain living in their family home for as long as it is a viable option."

Bryan further testified that he was concerned that his parents, Claudia and Frederic, were "being subjected to undue influence." He explained that he "took measures to make sure that the Respondent [Claudia] had someone else with her on different occasions," including when Claudia's daughter, Kimberly Hamel, visited Lexington. Bryan also stated that Jonathan sought to have their father, Frederic Schwab, declared incompetent for purposes of medical decisionmaking. Bryan further testified that Frederic Schwab requested that Bryan be appointed to exercise his power of attorney after learning of Jonathan's attempt to move Claudia and Frederic to a residential living facility in Charlottesville.

Five of Claudia's caregivers testified at the July 30, 2025 hearing and characterized Bryan and his wife as the primary coordinators of Claudia Schwab's care. They said that Bryan and Elizabeth "took steps to coordinate the schedules of these caregivers" and arranged home modifications to ensure that the "home is conducive for live-in caregivers." The caregivers also indicated that Bryan and Elizabeth were "generally always available for communication"—and were often present in the home throughout the day.

Sheila Wilder, one of the caregivers, testified that Claudia's physical and cognitive improvement since her fall was "attributable to the efforts taken by Bryan and Elizabeth Schwab to arrange for appropriate care through occupational and physical therapy and to give proper support to live-in and hourly caregivers." In November 2024, when Jonathan Schwab filed his petition, the caregivers indicated that Claudia was "immobile and effectively bed-ridden." The caregivers further testified that Claudia "hardly spoke and was relatively unresponsive." By the July 30, 2025 hearing date, the caregivers explained that Claudia was able to "speak clearly, seemed responsive in conversations, and was able to walk to the kitchen table with assistance and eat meals with her family."

On September 24, 2025, the circuit court entered an order appointing Jonathan as the guardian and conservator for Claudia Schwab. In a letter opinion, the circuit court noted that both petitioners were suitable candidates but that each petitioner had exhibited behavior that raised concerns. The circuit court noted, however, that Jonathan's actions were not "inherently inconsistent with his mother's best interests" and that Bryan's conduct may be "a reflection of his personality and mannerisms" but that he "clearly has his mother's best interests in mind." The circuit court ultimately placed significant emphasis on Dr. Schirmer's "very credible" testimony that favored Jonathan, Jonathan's "stronger present ties to the community where his mother resides," and the recommendation of Claudia's guardian *ad litem* that Jonathan's petition be granted. In the order appointing Jonathan as conservator for Claudia, the circuit court further required, however, that Jonathan seek and obtain the circuit court's approval before changing Claudia's residence. The order also required that the appointment of Jonathan as Claudia's guardian and conservator be reviewed at a hearing scheduled within a year of its September 24, 2025 order—and then reviewed again every three years pursuant to Code § 64.2-2009. Bryan now appeals the circuit court's decision to this Court.

## II. ANALYSIS

### A. Notice under Code § 64.2-2004

On appeal to this Court, Bryan argues, "The Circuit Court erred by entering the September 24, 2025 Order Appointing Guardian and Conservator without jurisdiction as a result of noncompliance with Virginia Code § 64.2-2004(B), (E), and (F)."

Code § 64.2-2004 states:

> Upon the filing of the petition, the court shall promptly set a date, time, and location for a hearing. The respondent shall be given reasonable notice of the hearing. The respondent may not waive notice, and a failure to properly notify the respondent shall be jurisdictional.

"On appeal, questions of statutory interpretation are reviewed *de novo* by this Court." *Marrison v. Fairfax Cnty. Dep't of Fam. Servs.*, 59 Va. App. 61, 66 (2011) (quoting *Hodges v. Dep't of Soc. Servs., Div. of Child Support Enf't*, 45 Va. App. 118, 123 (2005)). This Court has stated, "Where a statute contains 'prohibitory or limiting language,' the statute is mandatory, and a court cannot exercise its subject matter jurisdiction if the requirements of the statute have not been met." *Boatright v. Wise Cnty. Dep't of Soc. Servs.*, 64 Va. App. 71, 80 (2014) (quoting *Marrison*, 59 Va. App. at 68). "In contrast, where a statutory directive is merely directory and procedural, as opposed to mandatory and jurisdictional, failure to comply with the statutory requirement does not necessarily divest the court of the power to exercise its subject matter jurisdiction." *Id.* (quoting *Marrison*, 59 Va. at 68). For purposes of our analysis here, we will assume without deciding that the notice requirement in Code § 64.2-2004 involves a question of subject matter jurisdiction. *See Bozarth v. Shelton*, 87 Va. App. 401, 408 n.4 (2026) (noting that the "doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available'" (quoting *Heald v. Rappahannock Elec. Coop.*, 80 Va. App. 53, 72 n.7 (2024))).

The parties do not dispute that the notice requirement contained in Code § 64.2-2004 was satisfied for the original hearing scheduled on April 3, 2025. Thus, the question before this Court on appeal is whether the jurisdictional notice requirement was satisfied for the continued hearing on May 30, 2025.

In *Weese v. Commonwealth*, 30 Va. App. 484, 491 (1999), the defendant appealed his conviction from the juvenile and domestic relations court to the circuit court. The defendant's legal guardian had received notice of the juvenile court "proceeding in accordance with the requirement of Code § 16.1-263," but the legal guardian did not receive additional notice of the defendant's appeal to the circuit court. *Id.* at 487. Code § 16.1-263(A) and (B) also "require a summons and additional notice of the 'subsequent' proceedings in the circuit court," but this Court clarified that "the additional notice is not constitutionally required and is not jurisdictional." *Id.* at 491. In that case, this Court concluded that because the juvenile defendant's legal guardian "received notice of the nature of the petition and a summons indicating the time, date, and place of the initial hearing, the constitutional and jurisdictional notice requirements were satisfied." *Id.*

This Court explained in *Weese* that the notice requirement of Code § 16.1-263(A) and (B) was jurisdictional. *Id.* Like the statute that was at issue in *Weese*, the statute at issue in this case, Code § 64.2-2004, also requires notice to the interested person who is before the court. *Id.* Both parties acknowledge that Claudia Schwab received adequate notice pursuant to Code § 64.2-2004 before the initial April 3, 2025 hearing.

In short, like in *Weese*, the respondent here was notified of the initial hearing and the notice requirements of Code § 64.2-2004 were satisfied. *Id.* This Court clearly explained that the subsequent notification requirements in the statute at issue in *Weese* were not jurisdictional. *Id.* at 492. Conversely, the statute at issue here does not require subsequent notice at all. In this

case, the initial notice requirement was adequately satisfied so any defect in subsequent notification requirements—if subsequent notification was even actually still required by Code § 64.2-2004[4]—would not deprive the circuit court of subject matter jurisdiction.[5]

In *Weese*, the initial notice which satisfied the statutory notice requirement was served for the proceedings in the *juvenile and domestic relations court* and the subsequent notice—that this Court held was not jurisdictional—was for proceedings in the *circuit court*. *Id.* Here, however, both the initial April hearing and the continued hearing in May were in the *same* court. Thus, like in *Weese*, where the established jurisdiction did not end when the case was continued into a completely different court, the circuit court's jurisdiction did not expire when it simply continued the hearing to a later date in the same court. The jurisdiction, which was satisfied and established by the required statutory notice for the April hearing, still existed when the circuit court conducted the continued hearing in May.

---

[4] Furthermore, even if Code § 64.2-2004 required some further notice for subsequent hearings (such as for the May 30, 2025 hearing) which was not jurisdictional in nature, Bryan did not make that argument to the circuit court so it is not preserved for appeal. Rule 5A:18. "Rule 5A:18 requires a litigant to make timely and specific objections, so that the trial court has 'an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals.'" *Zeng v. Wang*, 82 Va. App. 326, 346 (2024) (quoting *Brown v. Commonwealth*, 279 Va. 210, 217 (2010)). Because the notice for the April 3, 2025 hearing established the circuit court's jurisdiction pursuant to Code § 64.2-2004, any subsequent notice requirement that possibly existed was a procedural issue and had to be raised before the circuit court in order to preserve it for appeal. *Id.*

[5] Bryan differentiates *Weese* by arguing that "the notice requirement in *Weese* ran to a third-party guardian who had already appeared and participated in the juvenile court proceedings," and that "the legislature crafted the statute's specific content requirements precisely because the Respondent may lack the capacity to follow proceedings independently." However, in *Weese*, this Court explained that once the statutory notice requirement was satisfied for the initial proceeding, any defect in subsequent notice did not deprive the circuit court of jurisdiction. 30 Va. App. at 492. Furthermore, this Court in *Weese* did not condition its analysis of jurisdictional notice on the interested party's role in the proceeding or on whether the interested parted was a third-party guardian or a respondent. *Id.* To the extent that Bryan argues that the third-party guardian in *Weese* participated in the initial hearing and that Claudia here did not, he conflates the statutory notice requirement and the issue of actual attendance, which is not the issue in the case before this Court.

Therefore, because Claudia was served notice of the initial hearing date as required by Code § 64.2-2004, the circuit court had jurisdiction to hear and decide the case at the May and July hearings.[6]

B. Appointment of Jonathan Schwab as Claudia's Guardian and Conservator

Bryan further argues:

> The Circuit Court abused its discretion and thereby erred by entering the September 24, 2025 Order appointing the Appellee, Jonathan Schwab, rather than the Appellant, as the Guardian and Conservator because the evidence presented established that the appointment of the Appellant, rather than Appellee, was in the best interests of the Respondent.

The record before this Court on appeal does not contain the substance of the parties' closing arguments. The statement of facts in lieu of a transcript simply states, "The parties provided closing arguments, with counsel arguing for their respective clients to be the guardian and conservator for the Respondent." Bryan's counsel signed the final order "seen and objected to" without specifying his objections, so it is not clear that Bryan preserved his argument for appellate review. *See Konefal v. Konefal*, 18 Va. App. 612, 615 (1994) ("Endorsing a decree 'seen and objected to' does not preserve an issue for appeal unless the record further reveals that the issue was properly raised for consideration by the trial court." (quoting *Twardy v. Twardy*, 14 Va. App. 651, 657 (1992) (*en banc*))).

However, assuming without deciding that Bryan did preserve his second assignment of error for appellate review, the circuit court did not abuse its discretion when it appointed Jonathan instead of Bryan. This Court has repeatedly stated, "We begin our analysis by

---

[6] Although Bryan and Jonathan both served Claudia with notice of the July 2025 hearing, Bryan argues that the jurisdictional notice for the July hearing did not retroactively establish jurisdiction for the May hearing and, thus, that the circuit court did not have subject matter jurisdiction and its order must consequently be vacated. Because the notice for the April hearing satisfied the jurisdictional requirement in Code § 64.2-2004, we need not reach the issue of whether the subsequent July notice perfected the circuit court's jurisdiction for the May hearing.

recognizing the well-established principle that all trial court rulings come to an appellate court with a presumption of correctness." *Wynnycky v. Kozel*, 71 Va. App. 177, 192 (2019) (quoting *Stiles v. Stiles*, 48 Va. App. 449, 453 (2006)). Thus, we evaluate the circuit court's decision to appoint Jonathan instead of Bryan under an abuse of discretion standard. *See Wiencko v. Takayama*, 62 Va. App. 217, 233 (2013) (applying an abuse of discretion standard of review on appeal in reviewing the circuit court's decision that relied heavily on the guardian *ad litem*'s recommendation). "Abuse of discretion means the circuit court has a 'range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'" *Callison v. Glick*, 297 Va. 275, 290 (2019) (quoting *Sauder v. Ferguson*, 289 Va. 449, 459 (2015)). A circuit court abuses its discretion:

> when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment.

*Id.* at 290-91 (quoting *Landrum v. Chippenham & Johnston-Willis Hosps.*, 282 Va. 346, 352 (2011)).

The circuit court stated in its letter opinion that "both petitioners are suitable," and the circuit court indicated that it had considered the report from Claudia's guardian *ad litem* expressing "certain reservations" for each petitioner like Jonathan's attempt to move the respondent against her wishes and Bryan's "domineering" approach. A "guardian *ad litem* is required to represent vigorously the . . . person under a disability, fully protecting that individual's interests and welfare." *Ferguson v. Grubb*, 39 Va. App. 549, 561 (2003) (quoting *Stanley v. Dep't of Soc. Servs.*, 10 Va. App. 596, 603 (1990)), *aff'd*, 242 Va. 60 (1991). Here,

the guardian *ad litem* recommended that Jonathan's petition be granted due to "his stronger present ties to the community where his mother resides," which the circuit court credited.[7]

In addition, the circuit court found Dr. Patricia Schirmer credible and stated, "Dr. Pat Schirmer provided very credible testimony to which the court assigns significant weight." The circuit court concluded that "Dr. Schirmer is unbiased" and acknowledged her support of Jonathan's petition.

Although Jonathan considered placing his parents in an assisted living facility, Jonathan testified at the May 30, 2025 hearing that he thought doing so was now no longer necessary.[8] Adult Protective Services determined that the reports made against Jonathan were unfounded and closed the reports without finding any abuse. Claudia's condition did actually eventually improve when under Bryan's care, but her condition had initially declined under his care and in November 2024, when Jonathan filed his petition, the respondent was "immobile and effectively bed-ridden." Furthermore, although Bryan visits Lexington often, Bryan still actually lives in Seattle, and Jonathan lives nearby in Lexington. Due to Jonathan's proximity to Lexington and Claudia's home, the circuit court found that Jonathan could assume Bryan's role of managing the respondent's care and coordinating with the in-home caregivers, given Jonathan's "stronger present ties to the community where his mother resides."

In short, based on the evidence in the record before this Court on appeal, we simply cannot say that the circuit court abused its discretion when it appointed Jonathan Schwab instead of Bryan Schwab as Claudia Schwab's guardian and conservator.

---

[7] The guardian *ad litem* in his brief to this Court on appeal reiterates that the circuit court correctly appointed Jonathan as Claudia's guardian and conservator, and he urges this Court to leave Jonathan as her guardian and conservator.

[8] In its September 24, 2025 order, the circuit court also required that Jonathan seek and obtain the circuit court's approval in the future before changing Claudia's residence.

## III.  CONCLUSION

For all of the foregoing reasons, we do not disturb the judgment of the circuit court.

*Affirmed.*